**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD ALVARADO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WAUKEEN McCOY, KAY M. PARKER, MICHAEL DAVIS, <br><br> Defendants. <br> _____ / | No. C 09-485 SI <br> Related Cases: C 04-0098 SI; C 04-0099 SI <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT PARKER'S MOTION FOR DECLARATORY RELIEF; DISMISSING DEFENDANT MICHAEL DAVIS WITHOUT PREJUDICE; DECLINING JURISDICTION OVER REMAINING ISSUES** |

On May 7, 2010, the Court held a hearing on plaintiffs' motion for summary judgment and defendant Parker's motion for declaratory relief. Plaintiffs filed this declaratory relief action because they wished to explore settlement of the then-pending Ninth Circuit appeals, and they seek a declaration of the parties' rights and responsibilities under the contingent fee agreement in the event of a settlement.[1] For the reasons set forth below, plaintiffs' motion is GRANTED in part and DENIED in part, and defendant Parker's motion for declaratory relief is GRANTED in part and DENIED in part. The Court DISMISSES WITHOUT PREJUDICE plaintiffs' claims against defendant Michael Davis.[2] To the extent that there are issues raised by plaintiffs' complaint for declaratory relief that this order does not resolve, the Court exercises its discretion and declines jurisdiction over those matters in this

---

[1] In June 2010, the Ninth Circuit issued decisions in both appeals. The mandate has issued in both appeals.

[2] At the hearing, the Court inquired about the status of this case with regard to defendant Davis. Plaintiffs' counsel stated that they believed Mr. Davis had moved to France, and that plaintiffs wished to dismiss their claims against Mr. Davis without prejudice.

case; any remaining questions regarding fees can be raised and addressed in *Alvarado et al. v. FedEx*, C 04-0098 SI.

## BACKGROUND

In 2009, plaintiffs Edward Alvarado and Charlotte Boswell filed this action for declaratory relief against their former attorneys, Waukeen McCoy, Kay M. Parker, and Michael Davis. The current case, *Alvarado et al. v. McCoy et al.*, C 09-485 SI ("*Alvarado II*"), involves a dispute between plaintiffs and their former counsel regarding the fee agreement between plaintiffs and the defendant lawyers in an earlier lawsuit, *Alvarado et al. v. FedEx*, C 04-0098 SI ("*Alvarado I*").

**I.    *Alvarado I***

*Alvarado I* was filed on behalf of sixteen plaintiffs, including Mr. Alvarado and Ms. Boswell, who alleged various claims of employment discrimination against FedEx. In 2002, plaintiffs entered into fee agreements with defendants McCoy and Davis. Amended Compl. Ex. 1, 2. Those fee agreements provide, in relevant part:

> We have agreed to the following attorney fee arrangement: (a) 33 1/3% of any amounts received or recovered by way of settlement prior to mediation and/or arbitration; (b) 40% of any amounts received or recovered by way of settlement after arbitration, mediation, or trial.

*Id.*

In 2004, plaintiffs discharged Mr. Davis. Alvarado Decl. ¶ 3; Boswell Decl. ¶ 3. Around January 2004, plaintiffs signed "Addendum No. 1" which deleted Mr. Davis from the retainer agreement and substituted defendant Parker as co-counsel with Mr. McCoy. Amended Compl. Ex. 3.

In 2006, plaintiffs discharged Ms. Parker, and proceeded to trial represented by Mr. McCoy and his office. Both plaintiffs prevailed at trial: in September 2006, a jury awarded Mr. Alvarado $500,000 on his retaliation claim, and in April 2007, a jury awarded Ms. Boswell $3 million on her claims for sexual harassment, retaliation, and constructive discharge. In post-trial orders filed on March 18, 2008, the Court remitted Mr. Alvarado's damages to $300,000, and applied the Title VII $300,000 cap to Ms. Boswell's punitive damages award, thus reducing her total damages to $850,000. Docket Nos. 1035-37

in C 04-0098 SI.

FedEx appealed. On appeal, Mr. Alvarado and Ms. Boswell retained different counsel to represent them; those counsel also filed the instant action for declaratory relief. In June 2010, the Ninth Circuit affirmed this Court's amended judgment in Mr. Alvarado's case. Also in June 2010, the Ninth Circuit affirmed in part and reversed in part the Court's amended judgment in Ms. Boswell's case. The mandate has now issued in both cases. On July 23, 2010, the Court held a case management conference in *Alvarado I* regarding Mr. Alvarado's case, as well as other matters that remain in *Alvarado I*, including matters related to attorneys' fees, as discussed in greater detail *infra*.[3]

## II. Statutory fee petitions for Alvarado and Boswell in *Alvarado I*

After the Court entered the amended judgments for plaintiffs Alvarado and Boswell, both Mr. McCoy and Ms. Parker sought statutory fees under FEHA from FedEx. FedEx challenged Ms. Parker's standing to seek statutory fees. In an order filed April 7, 2008, the Special Master held that Ms. Parker had standing to seek fees under FEHA; this Court adopted those rulings in an order filed June 5, 2008. The Special Master held that the fee agreements "appear to address only what the attorneys will receive 'by way of settlement,'" and that they "do not contemplate what would happen if there was no settlement and the matter was resolved solely by trial." As a result, the Special Master and the Court held that Ms. Parker had standing to seek statutory fees for the work she performed on behalf of Mr. Alvarado and Ms. Boswell. Ms. Parker's fee motions are currently pending before the Special Master.

Mr. McCoy also filed motions for statutory fees for the Alvarado and Boswell cases. After extensive proceedings, the Special Master found, as did the Court on review of the Special Master's order, that Mr. McCoy made numerous misrepresentations to the Court in connection with those fee petitions. In an order filed on March 19, 2009, the Court denied Mr. McCoy's fee petitions, and sanctioned Mr. McCoy by denying him leave to refile the petitions and by imposing monetary sanctions. Docket No. 1353 in C 04-0098 SI. Mr. McCoy appealed the sanctions order, and in June 2010, the Ninth Circuit affirmed the Court's initial denial of the fee petitions, but reversed the imposition of

---

[3] At the time of the July 23, 2010 case management conference, the mandate had not yet issued in Ms. Boswell's case.

3

sanctions on the ground that the Court did not afford Mr. McCoy adequate process prior to imposing the sanctions. At the July 23, 2010 case management conference in *Alvarado I*, the Court set a briefing schedule and hearing on Mr. McCoy's motion regarding whether he should be permitted to refile the statutory fee petitions for the Alvarado and Boswell cases.

### III. Attorneys' fees and the settlement plaintiffs in *Alvarado I*

In November 2007, the seven remaining plaintiffs in *Alvarado I* reached settlements with FedEx ("settlement plaintiffs"). Mr. McCoy and his office represented those plaintiffs in the settlement negotiations. Each plaintiff signed identical settlement agreements, save for the amount of the settlement. The settlement agreements released all claims for attorneys' fees, including any claims by Ms. Parker for her fees and costs. In accordance with the settlement release language, Mr. McCoy did not seek statutory FEHA fees from FedEx with respect to the seven settlement plaintiffs.[4]

Ms. Parker, however, wished to seek statutory FEHA fees from FedEx with respect to the seven settlement plaintiffs. Ms. Parker contended that she was not bound by the settlement agreements' release of attorneys' fees and costs because neither the plaintiffs nor Mr. McCoy represented her interests in the settlement negotiations, and the parties excluded her from the settlement process. Ms. Parker also contended that she had the right to seek fees directly from FedEx under FEHA, and she relied on the Special Master's order (and this Court's adoption of that order) finding that Ms. Parker had standing under FEHA to seek fees directly from FedEx for the work she performed on behalf of plaintiffs Alvarado and Boswell. In response, FedEx filed a motion for declaratory relief seeking an order that Ms. Parker had no right to fees from FedEx. In an order filed January 27, 2009, the Court granted FedEx's motion for declaratory relief, and held that Ms. Parker could not seek statutory fees under FEHA from FedEx with regard to the seven settlement plaintiffs:

Assuming arguendo that Ms. Parker is not bound by the settlement agreements, the Court

---

[4] However, after an evidentiary hearing, the Court found that Mr. McCoy improperly required three settlement plaintiffs to make cash payments to him out of their 60% portion of the settlement proceeds, in contravention of his sworn representation to this Court that the settlement plaintiffs would receive the entire 60% portion of the settlement amounts without any deductions for attorneys' fees or costs. *See generally* December 18, 2009 Order Re: Disbursement of Interpled Funds, Docket No. 1499 in C 04-0098 SI.

4

nevertheless concludes that she may not seek fees directly from FedEx. In *Flannery v. Prentice*, the California Supreme Court held that "attorney fees awarded pursuant to [FEHA] (exceeding fees already paid) belong, absent an enforceable agreement to the contrary, to the attorneys who labored to earn them." 26 Cal. 4th at 590. Here, as the Special Master noted in his order, the fee agreements expressly address fee arrangements in the event of a settlement, and under those agreements the attorneys shall recover "40% of any amounts received or recovered by way of settlement after arbitration, mediation, or trial." The Court concludes that these agreements constitute an "agreement to the contrary" under *Flannery*, and thus Ms. Parker does not have standing to seek fees under FEHA directly from FedEx.

To the extent Ms. Parker is entitled to fees, she may seek them from her former clients under *quantum meruit*. In *Fracasse v. Ray Raka Brent*, 6 Cal. 3d 784 (1972), the California Supreme Court held that an attorney retained under a contingent fee agreement and then discharged with or without cause is to be compensated in the amount of the reasonable value of her services rendered to the time of discharge. The Court also noted, "To the extent that such a discharge is followed by the retention of another attorney, the client will, in any event be required, out of any recovery, to pay the former attorney for the reasonable value of his services. Such payment, in addition to the fee charged by the second attorney, should certainly operate as a self-limiting factor on the number of attorneys so discharged." *Id*. at 791. The Court found that its ruling "preserve[s] the client's right to discharge his attorney without undue restriction, and yet acknowledge[s] the attorney's right to fair compensation for work performed." *Id*.; *see also Madirossian & Assoc., Inc. v. Ersoff*, 153 Cal. App. 4th 257, 272 (2007) ("It is well settled that a contingency fee lawyer discharged prior to settlement may recover in quantum meruit for the reasonable value of services rendered up to the time of discharge."); *Di Loreto v. O'Neill*, 1 Cal. App. 4th 149, 156-57 (1991) ("[Where] the contingent fee is insufficient to meet the quantum meruit claims of both discharged and existing counsel, the proper application of the *Fracasse* rule is to use an appropriate pro rata formula which distributes the contingent fee among all discharged and existing attorneys in proportion to the time spent on the case by each. Such a formula insures that each attorney is compensated in accordance with work performed, as contemplated by *Fracasse*, while assuring that the client will not be forced to make a double payment of fees.").

January 27, 2009 Order at 5-7 (internal footnotes omitted). Docket No. 1279.

In an order filed December 18, 2009, the Court determined Ms. Parker's *quantum meruit* recovery for the seven settlement plaintiffs, and apportioned the contingent fee on a *pro rata* basis between Ms. Parker and Mr. McCoy based on this Court's assessment of the relative value of each attorney's work on behalf of the settlement plaintiffs.

**IV.** *Alvarado II*

In this case, plaintiffs Alvarado and Boswell seek a determination of the rights and duties under the *Alvarado I* fee agreements. The amended complaint alleges that "Plaintiffs and FedEx Corporation (the defendant in the underlying action) wish to discuss settlement of FedEx's appeals from the amended

5

judgment. Because of the ambiguity of their legal services agreements, the plaintiffs cannot determine the extent of their liability to defendants for attorney fees. Furthermore, they cannot determine whether a settlement of their appeals with FedEx might alter their liability for attorney fees under the legal services agreement by, for example, transforming a 'judgment' into a 'settlement.'" Amended Compl. ¶ 14.

Plaintiffs have filed a motion for summary judgment contending that (1) in the event of a recovery by trial the only compensation to be provided to defendants McCoy and Parker under the fee agreements with plaintiffs is the exclusive right to pursue statutory fees; (2) neither Mr. McCoy nor Ms. Parker is entitled to *quantum meruit*; and (3) the parties have fully discharged their obligations under the fee agreements and hence the judgments awarded to plaintiffs belong solely to plaintiffs and may be settled without plaintiffs becoming liable to pay any portion of such settlements to defendants Parker and McCoy.

Ms. Parker seeks a declaration that (1) once the amended judgments were entered, her right to recover statutory fees from FedEx became a vested property right and that any future settlement may not dispose of her vested and choate property interest in statutory fees and costs without her participation and agreement; and (2) she also has a right to seek fees in *quantum meruit* from plaintiffs in the event she is denied a "compensatory FEHA fee."

Defendant McCoy opposes plaintiffs' motion for summary judgment and Parker's motion for declaratory relief. Defendant McCoy contends (1) this matter is not ripe; (2) under the fee agreements, a settlement on appeal[5] is a settlement after trial, and thus Mr. McCoy is entitled to 40% of the recovery[6]; and (3) if the fee agreements are found not to apply to amounts received at trial, Mr. McCoy is entitled to recover under *quantum meruit*.

---

[5] The Court refers to the parties' arguments as they were framed in the papers, which were filed prior to the Ninth Circuit's resolution of the appeals.

[6] At the hearing, counsel for Mr. McCoy stated that in the event of a settlement on appeal, it might be possible that, depending on plaintiffs' fee agreements with their current counsel, the contingency fee would be apportioned between Mr. McCoy and current counsel.

6

**LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**I.  Ripeness**

Defendant McCoy contends that this declaratory relief action is not ripe, and that resolution of any dispute over attorneys' fees and the interpretation of the fee agreements must wait until FedEx actually pays money to resolve the underlying actions and interpleads the funds.

To determine whether there is a live controversy under the Declaratory Judgment Act, the Court must evaluate "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests,of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312

7

1  U.S. 270, 273 (1941). Declaratory relief is appropriate "(1) when the judgment will serve a useful
2  purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford
3  relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by*
4  *Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984).

5        The Court finds that there is a ripe controversy regarding how the contingent fee agreement
6  applies in the event of a settlement post-trial, and the Court resolves this question in this order.
7  Plaintiffs' declaratory relief complaint alleges that plaintiffs wish to explore settlement, and there is a
8  current dispute among plaintiffs and their former counsel about the effect of a settlement on Parker's
9  and McCoy's claims for attorneys' fees.[7] *See Eureka Federal Savings & Loan Ass'n v. American Cas.*
10 *Co.*, 873 F.2d 229, 232 (9th Cir. 1989) (holding declaratory relief action seeking declaration of policy
11 limits under insurance policy was ripe because "American's settlement posture thus indicates to us that
12 a settlement cannot be achieved in *Kidwell* without a resolution in this case of the limits of liability
13 coverage").

14       Relatedly, the Court finds that there is a live controversy regarding the effect, if any, of a
15 settlement on Ms. Parker's right to seek statutory fees, as well as Ms. Parker's right to seek fees in
16 *quantum meruit*, and the Court resolves these questions in this order. Ms. Parker's statutory fee
17 petitions are currently being litigated, and in July 2010 the Special Master held a dispositive hearing on
18 those matters. Ms. Parker has filed a lien against plaintiffs' judgments, and she seeks a declaration that
19 she is entitled to fees in *quantum meruit* in the event her statutory fee petitions are denied or if she
20 deems any statutory fee award insufficient.

21       Finally, to the extent that plaintiffs' complaint for declaratory relief and motion for summary
22 judgment seek an interpretation of the contingency fee agreement in the event of a recovery at trial
23 (without a settlement), the Court finds that this question is now ripe in light of the disposition of the
24 Boswell and Alvarado appeals. However, as discussed below, the Court finds that the plain language
25 of the fee agreement does not address the fee arrangement in the event of a judgment at trial, and thus

---

27   [7] At the July 23, 2010 case management conference in *Alvarado I*, counsel for plaintiffs Boswell and Alvarado stated that even after the Ninth Circuit's disposition of the appeals, plaintiffs and
28 FedEx remain interested in exploring settlement, and that the disputes over fees remained an impediment to settlement discussions.

8

this question can not be resolved on this record. Further, due to the proceedings underway in *Alvarado I* regarding (1) FedEx's upcoming motion to interplead Mr. Alvarado's judgment, and (2) Mr. McCoy's upcoming motion to refile his statutory fee petitions in the Alvarado and Boswell cases, the Court finds it appropriate to exercise its discretion and decline jurisdiction over the balance of the declaratory relief action, as any remaining issues concerning attorneys' fees in the Boswell and Alvarado cases can and should be litigated in *Alvarado I*, C 04-0098 SI.

## II.     Interpretation of fee agreements

Plaintiffs contend that the fee agreement only provides for attorneys' fees in the event of a settlement. Plaintiffs argue that the fee agreement does not explicitly provide for attorneys' fees in the event of a recovery by arbitration or trial, and that "the failure to provide for fees upon recovery by arbitration or trial was by design, it being contemplated that in such event the attorneys would be compensated solely by means of statutory fees awarded by the court and not by a percentage of the recovery." Plaintiffs' motion at 2:7-10. Plaintiffs then argue – in a leap of unexplained logic – that based on this interpretation of the fee agreements, the Court should hold that the parties have fully discharged their obligations under the fee agreements and that the judgments awarded to plaintiffs now belong solely to plaintiffs and may be settled by plaintiffs without plaintiffs becoming liable under the fee agreements to defendants.

Defendant Parker agrees with plaintiffs that the fee agreements only explicitly address fees in the event of a settlement, and that the agreements contain no provision concerning attorney's fees sought or awarded after the clients secured a verdict and judgment. Parker asserts that "Plaintiffs are correct in asking this Court to determine that a settlement of the amounts that FedEx is obligated to pay on the Alvarado and Boswell judgments would not convert Plaintiffs Alvarado and Boswell to the status of 'non-verdict settlement plaintiffs,' like that of the seven plaintiffs governed by this Court's January 27, 2009 Order." Parker's response at 8:8-11. Parker seeks a declaration that "when Alvarado and Boswell secured judgments after trial and after verdict, they permanently assumed the status of judgment plaintiffs, and that the Retainer Agreements can never negate Ms. Parker's ownership of the statutory fee under *Flannery*." *Id*. at 8:15-18.

9

1  Defendant McCoy contends that under the plain language of the fee agreements, if plaintiffs
2 settle on appeal, that constitutes a "settlement after trial" and that he would be entitled to 40% of the
3 recovery, or some *pro rata* portion as between him and plaintiffs' current attorneys. McCoy also argues
4 that the fee agreements give him a 40% contingency after trial, whether or not plaintiffs settle, and he
5 argues that the question of the attorneys' recovery after a trial cannot be summarily adjudicated. McCoy
6 notes that plaintiffs' complaint for declaratory relief alleges that the fee agreements are susceptible to
7 four different interpretations, and that plaintiffs have failed to establish with any evidence that their
8 interpretation is the correct one. McCoy has also submitted evidence in support of his interpretation of
9 what the fee agreements provide in the event of a recovery by way of trial, with no settlement.

10  "The interpretation of a written instrument . . . is essentially a judicial function to be exercised
11 according to the generally accepted canons of interpretation so that the purposes of the instrument may
12 be given effect." *Parsons v. Bristol Development Co.*, 62 Cal.2d 861, 865 (1965). The California Civil
13 Code sets forth numerous guidelines under which a contract must be interpreted. "A contract must be
14 so interpreted as to give effect to the mutual intention of the parties as it existed at the time of
15 contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. When interpreting
16 a contract, California courts begin their analysis with the language itself. "The language of a contract
17 is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."
18 *Id.* at § 1638. "[T]he intention of the parties is to be ascertained from the writing alone, if possible . .
19 . ." *Id.* at §1639. "The whole of a contract is to be taken together, so as to give effect to every part, if
20 reasonably practicable, each clause helping to interpret the other." *Id.* at §1641. "Whether a contract
21 provision is ambiguous is a question of law. If it is, ordinarily summary judgment is improper because
22 differing views of the intent of parties will raise genuine issues of material fact." *Maffei v. Northern*
23 *Ins. Co. of New York*, 12 F.3d 892, 898 (9th Cir. 1993).

24  The Court holds that the plain language of the fee agreements addresses attorneys' fees in the
25 event of a settlement, whether the settlement occurs prior to mediation and/or arbitration, or "after
26 arbitration, mediation or trial," which includes a settlement on appeal (or any time post-trial). The fee
27 agreements provide:
28  We have agreed to the following attorney fee arrangement: (a) 33 1/3% of any amounts

10

> received or recovered by way of settlement prior to mediation and/or arbitration; (b) 40% of any amounts received or recovered by way of settlement after arbitration, mediation, or trial.

Amended Compl. Ex. 1. A settlement on appeal is a "settlement after trial," and plaintiffs do not explain how they reach their interpretation that the fee agreement would not apply to a settlement on appeal.

The Court further finds that the fee agreements do not fully address the question of the attorneys' fees arrangement in the event of a recovery by way of trial. Plaintiffs assert that the parties intended that in this situation, the attorneys' recovery was solely limited to statutory fees from the defendant. However, to reach this conclusion, the Court would be required to draw inferences that are not supported by the current record. Conversely, Mr. McCoy asserts that the parties intended for both a contingent recovery and statutory fees. Again, because the agreements are silent on issue of attorneys' fees in the event of a recovery at trial, the Court cannot resolve this question on the present record. As discussed *supra*, the Court will resolve these questions as necessary in the upcoming proceedings in *Alvarado I*.

The Court's finding that a settlement on appeal is a "settlement after trial" under the fee agreements does not, as defendant Parker fears, convert plaintiffs into the same status as the seven settlement plaintiffs, nor does it negate her right to seek statutory fees based on the work she performed for plaintiffs. The seven settlement plaintiffs settled prior to trial, and they were bound both by their settlement agreements with FedEx and the fee agreements providing for a 40% contingent fee recovery. In contrast, plaintiffs Alvarado and Boswell proceeded to trial and obtained a verdict. Unlike the case of the settlement plaintiffs where the fee agreements explicitly address the fee arrangement in the event of settlement, the fee agreements do not address the attorneys' fees recovery in the event of a recovery by trial; it was due to the absence of such language that the Special Master and this Court held that Ms. Parker had standing to seek statutory fees from FedEx related to her work for plaintiffs Alvarado and Boswell. If plaintiffs settle their cases, those settlements would not alter Ms. Parker's right to seek statutory fees from FedEx.

### III. *Quantum meruit*

Defendant Parker seeks a declaration that in addition to her right to seek statutory fees from FedEx, she has a right to seek fees from plaintiffs under *quantum meruit* in the event she does not

11

receive a "fully compensatory" statutory fee. Parker relies on *Fracasse v. Brent*, 6 Cal.3d 784 (1972), and *Mardirossian & Assoc., Inc. v. Ersoff*, 153 Cal. App. 4th 257 (2007), which both held that discharged attorneys had a right to recover in *quantum meruit* from their former clients. However, if not for *quantum meruit*, the attorneys in *Fracasse* and *Mardirossian* would have received nothing,[8] even though there was an expectation on the part of both the discharged attorneys and the clients that the discharged attorneys would receive compensation for their services. Here, in contrast, Ms. Parker is seeking her statutory fees for all of the work she performed for plaintiffs. Ms. Parker has provided no authority for the contention that a discharged attorney may recover in *quantum meruit* from her former clients if she is dissatisfied with a statutory fee award.

Plaintiffs contend that Mr. McCoy is not entitled to recover in *quantum meruit* because the fee agreements solely limit him to the right to seek statutory fees in the event of a recovery by way of trial. For the reasons stated above, the question of Mr. McCoy's fee recovery will be litigated in *Alvarado I*.

## CONCLUSION

For the reasons set forth above, the Court holds that (1) under the language of the fee agreements, a settlement on appeal is a "settlement after trial," and thus the fee agreement applies; (2) the question of how the fee agreements treat attorneys' fees in the event of a recovery at trial without a subsequent settlement, as well as the questions surrounding Mr. McCoy's fees, will be resolved in *Alvarado I*; (3) Ms. Parker's right to seek statutory fees from FedEx is vested and will not be affected or negated if plaintiffs settle their cases; and (4) Ms. Parker does not have a right to seek her fees in *quantum meruit* from plaintiffs.

Plaintiffs' motion for summary judgment is GRANTED IN PART AND DENIED IN PART,

---

[8] In *Fracasse*, the underlying lawsuit involved personal injury claims. 6 Cal. 3d at 786. In *Mardirossian*, the underlying lawsuit involved contract, tort and fraud claims. 153 Cal. App. 4th at 261. Thus, in neither case could the discharged attorney seek statutory fees, unlike the case here.
Similarly, the Court's prior ruling holding that Ms. Parker could seek a *quantum meruit* recovery in the cases of the seven settlement plaintiffs rested on the Court's determination that the fee agreements' provision regarding fees in the event of settlement governed Ms. Parker's fee claim, and thus that Ms. Parker did not have standing to seek statutory fees.

and defendant Parker's motion for declaratory relief is GRANTED IN PART AND DENIED IN PART. (Docket Nos. 39 and 51 in C 09-485 SI; Docket No. 1149 in C 04-0098 SI).  Plaintiffs' claims against defendant Davis are DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Dated: September 27, 2010

SUSAN ILLSTON
United States District Judge